# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JEFFERY R. YATES, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00132 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  Introduction

Plaintiff Jeffery R. Yates brings this case challenging the Social Security Administration's denial of his applications for Disability Insurance Benefits and Supplemental Security Income.  According to the administration, Plaintiff was not eligible for benefits because he was not under a "disability" as defined by the Social Security Act.

When Plaintiff applied for benefits, numerous health problems limited his work abilities.  His health problems included a neck-fusion surgery involving his 3rd through 7th cervical vertebrae, bone and disc deterioration, depression, and 4 broken bones in his left foot.  (*PageID#* 294).   He asserted in his applications that he had been under a benefits-

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

qualifying disability starting on July 21, 2010.

The case is presently before the Court upon Plaintiff's Amended Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), the administrative record (Doc. #6), and the record as a whole.

Plaintiff mainly challenges an Administrative Law Judge's rejection of the opinions provided by Dr. Dean, Plaintiff's long-time treating physician, and the Administrative Law Judge's failure to apply res judicata to a previous decision denying him benefits. The Commissioner disagrees with both challenges and seeks an Order affirming the ALJ's decision.

## II. Background

### A. Plaintiff's Testimony

Plaintiff was 42 years old on his alleged disability onset date, placing him in the category of a "younger person" for purposes of resolving his claims for Disability Insurance Benefits and Supplemental Security Income. *See* 20 C.F.R. § 404.1563(c). His past relevant employment includes work as a warehouse worker/shipping clerk, vehicle painter, and armored car driver.

At his administrative hearing in September 2012, Plaintiff testified he is 5'8" tall and weighs 231 pounds. (*PageID#* 77). He lives with his wife, dependent child, and adult stepdaughter. His wife brought him to the hearing. He has a driver's license but does not drive a lot because it is difficult for him to sit and turn his neck to see. Beginning in the 7th

grade, he took special education classes. He graduated from high school.

Plaintiff last worked in 2007 as an armored car driver. He stopped working after back surgery. Surgeons fused his 3rd to 7th cervical vertebra with titanium plates and 8 screws. (*PageID#* 79).

Plaintiff testified that pain is the biggest problem affecting his ability to work full time. He described his pain as "[i]n the neck, down both shoulder blades, down both arms. I'm having lower back pain now. That generates down the lower backs of the legs to right under the knees." (*Id.*). Most of his pain is in his neck and lower back. He takes approximately 7 different medications for his various impairments. Pain medication makes him drowsy and "not . . . able to function correctly . . ." (*PageID#* 80).

Plaintiff estimates he can walk about 10 minutes at a time. He needs to "keep moving" while seated or he gets sore. (*PageID#* 81). Depending on how he feels, he can sometimes pick up a half gallon of milk (which is about 4 pounds). If he is too sore, he will not even attempt to lift this. He does not do any chores or have any hobbies. He does not smoke.

When cross examined by his attorney, Plaintiff indicated he has constant numbness in his right arm and constant pain in his neck. Pain medication only "knocks the edge off." Otherwise, his pain "just feels like knives on [his] neck, this real sharp pain." (*PageID#* 83). If he sits for a long period of time his legs go numb. Without medication, on a scale of 0 to 10 where 0 is no pain and 10 is "the most excruciating pain you can imagine," Plaintiff

rated his pain, without medication, as a 10. (*PageID#* 84). With medication, his pain is 7 or 8. (*Id.*). He also testified that he does not sleep well at night. He is usually up 3 or 4 times, and estimates he only sleeps for approximately 5 hours each night. He tries to nap during the day.

Plaintiff testified his most comfortable position is lying down. He spends about 3 to 4 hours in that position per day, but on a bad day he can be in bed all day long. Plaintiff also has trouble gripping objects because his right hand "goes numb quite frequently." (*PageID#* 86). And he has trouble paying attention and concentrating due to pain.

Typically, Plaintiff wakes up around 6:45 a.m. to see his daughter before she goes to school. He takes pain medication then sits and watches television most of the day. (*PageID#* 82).

### B. Medical Evidence

On April 4, 2012, Plaintiff's treating physician, Dr. Dean, wrote a letter reporting that Plaintiff had undergone multiple neck surgeries with the most recent involved cervical fusions. Dr. Dean wrote:

> At this time he is left with coolness, numbness and tingling in the right upper extremity that have worsened over the past year. Along with worsening neck and back pain, there is a new development of joint pain. In order to carry out daily activities he takes narcotic pain medication to help lessen the symptoms. Due to the limitations he has been unable to seek further treatment such as pain management, for his low back pain and cervical spine issues. In my opinion this patient is unable to work at this time due to chronic neck pain and low back pain.

(*PageID#* 671). Dr. Dean also checked-marked answers on a form attached to his letter

indicating his opinions that Plaintiff could not lift any weight during an 8-hour workday; grasp, push and pull, or engage in fine manipulation; repetitively operate foot controls; bend, squat, crawl, climb steps or ladders; or reach above shoulder level.  During an 8-hour workday, he was further limited to single periods lasting of 10 minutes for 1-hour total of standing or walking or sitting.  (*PageID*#s 672-73).

      The administrative record contains many medical additional opinions plus medical records from Plaintiff's treating and non-treating medical sources.  A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the Administrative Law Judge and Plaintiff's counsel have accurately summarized the relevant records with citations to specific evidence.

**III.**    <u>**"Disability" Defined And Two Administrative Decisions**</u>

      To be eligible for Disability Insurance Benefits (DIB) or Supplemental Security Income (SSI) a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70.

5

Plaintiff filed an application for DIB and SSI in 2007.  ALJ James I.K. Knapp denied those applications under the controlling 5-step sequential evaluation.  *See* 20 C.F.R. §404.1520(a)(4); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  ALJ Knapp concluded that Plaintiff was not under a "disability," as defined by the Social Security Act.  (*PageID*#s 96-107).  ALJ Knapp's non-disability decision was based, in part, on his finding that Plaintiff could perform a limited range of light work.  He believed that Plaintiff was limited in 5 ways: he could not (1) lift more than 10 pounds frequently or 20 pounds occasionally; (2) perform tasks that would require crawling or climbing of ladders or scaffolds; (3) perform work that required him to reach above shoulder level on more than occasionally; (4) work at unprotected heights or around moving machinery; and (5) carry out complex, detailed, or written instructions.  (*PageID#* 103).

Although ALJ Knapp concluded that Plaintiff could not perform his past relevent work, ALJ Knapp further found that Plaintiff could perform a significant number of sedentary jobs available in the national economies.  (*PageID*#s 105-07).

After ALJ Knapp's decision, Plaintiff applied for DIB and SSI in 2010.  Plaintiff's applications and evidence proceeded to a hearing before ALJ David A. Redmond.  In the decision at issue here, ALJ Redmond concluded that Plaintiff could perform a reduced range of light work as follows:

> [Plaintiff] has the residual functional capacity to perform light work ... with the following limitations: no more than occasional over-the-shoulder reaching; precluded from hazards such as unprotected heights and moving machinery; and limited to simple tasks.

6

(*PageID#* 59). ALJ Redmond also found that Plaintiff could not perform his past relevant work. And ALJ Redmond concluded that Plaintiff – at age 42 and with his high-school education, and work experience – could perform a significant number of unskilled jobs that are available in the national economy. *Id*. at 65-67. He thus ultimately concluded that Plaintiff was not under a benefits-qualifying disability.

## IV. Judicial Review

The Social Security Administration's determination of disability – here, embodied in ALJ Redmond's decision – is subject to judicial review along two lines: whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings. *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007). Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *see Rabbers v. Comm'r of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).

The substantial-evidence review does not ask whether the Court agrees or disagrees with the ALJ's factual findings or whether the administrative record contains evidence contrary to those factual findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, substantial evidence supports the ALJ's factual findings when "a 'reasonable mind might accept the relevant evidence as

adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241; *see Gentry*, 471 F3d at 722.

V.     **Discussion**

   A.     **Medical Source Opinions**

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Dr. Dean, his treating physician, by using all the factors in 20 C.F.R. § 404.1527. Plaintiff further argues that the ALJ erred by neglecting to provide good reasons for the weight he placed on Dr. Dean's opinions and by rejecting Dr. Dean's opinions regarding Plaintiff's mental limitations and abilities.

ALJ Redmond set forth the correct legal standards for evaluating Dr. Dean's opinions by first stating the standards applicable to determining whether a treating medical source's opinions are due controlling weight and, second, the factors that are otherwise applicable to evaluating a treating medical source's opinions. *See PageID#* 64-65; *see also Rogers*, 486 F.3d at 242-43. The issues thus becomes whether ALJ Redmond provided good reasons to reject Dr. Dean's opinion and whether substantial evidence supports his reasons. *See, e.g., Bass v. McMahon*, 499 F.3d 506, 509-12 (6th Cir. 2007).

Social Security regulations promise applicants, "We will always good reasons ... for the weight we give your treating source's opinions." 20 C.F.R. §404.1527(c)(2); *see Wilson*

*v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The good-reasons mandate is satisfied when the ALJ has provided "sufficient reasons for the weight given to the treating source's medical opinions, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting Soc. Sec. Ruling 96-20, 1996 WL 374188 at *5 (1996)).

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal citation omitted).

In the present case, ALJ Redmond's explanation of his reasons for discounting Dr. Dean's opinions constituted sufficient detail to satisfy the "good-reasons" requirement. The ALJ reasonably rejected Dr. Dean's opinion because Plaintiff presented minimal objective evidence that his condition had deteriorated after July 2010 – when ALJ Knapp last found him able to do a reduced range of light work – or that his condition had deteriorated as extensively as Dr. Dean opined. In support of the conclusion regarding the minimal objective evidence supporting Dr. Dean, ALJ Redmond referred to his earlier review of the objective evidence. There, ALJ Redmond accurately reviewed the evidence as follows:

> Objective signs and findings from the claimant's treating and examining physicians also show no significant deterioration in the claimant's cervical or

> lumbar spine disorders.  For example, when the claimant sought emergency room treatment for his left foot fractures on August 2, 2010, a neck and back examination was normal.  (Exhibit 15F, page 7 [*PageID#* 593]).  When the claimant presented to the emergency room for treatment of a kidney stone on April 7, 2011, a back examination showed only left lumbar tenderness.  Straight leg raising was negative, and a neurological examination was normal (Exhibit 15F, pages 13-24 [*PageID#*s 599-610].  The claimant sought emergency room treatment for back pain on October 25, 2011, but a musculoskeletal examination showed only lumbar spine tenderness.  Findings were otherwise relatively normal.  (Exhibit 18F, pages 4-6 [*PageID#*s 661-663]).

(*PageID#* 61).  In addition, x-rays of Plaintiff's lumbar spine on October 25, 2011 showed "normally aligned vertebrae without acute fractures or subluxations.  Disc spaces are normally maintained...." (*PageID#* 658).  Other findings were minimal and the diagnostic impression explained: "Except for minimal degenerative changes, no acute osseous [bone] pathology."  *Id*.

Plaintiff points to Dr. Dean's September 2010 and March 2012 notes and argues that these notes document "worsening" pain, tingling, or numbness or reduced motion in the back, neck, and ankles.  These notes documented Plaintiff's subjective reports and do not point to objective evidence or test results supporting a worsening of his lumbar or cervical spine problems.  ALJ Redmond also considered more objective findings than Plaintiff references.  For example, ALJ Redmond referred to Dr. Dean's notations – beginning in 2010 – that show absent reflexes in Plaintiff's right bicep. (*PageID#*s 65, 143, 532).  And the ALJ discussed the March 2012 and April 2012 exams that first revealed some reduced neck and back motion.  (*PageID#*s 32, 532, 679, 681).  The ALJ reasonably

10

determined that Dr. Dean had documented no significant objective changes in Plaintiff's condition, or at least any change that would objectively preclude a reduced range of light work.  As the ALJ discussed, Dr. Dean's exams were largely normal – in September 2010, Plaintiff had full motor capabilities and normal extremities and in March and April 2012, Plaintiff had full motor capabilities and no swelling.  (*PageID*#s 532, 679, 681).  Dr. Dean's treatment notes documented no problems with walking, lifting, maintaining postures, or using hands, let alone the very serious problems Dr. Dean identified in the opinions he provided through his check marks in the form he completed in March 2012.

Furthermore, Plaintiff does not specifically contest the ALJ's reasoning that all of the MRIs and x-rays that followed ALJ Knapp's decision in July 2010 objectively verified at most minimal physical deterioration.  Although Dr. Dean's April 2012 letter mentioned Plaintiff's past surgeries together with his reports of numbness, tingling, joint pain, and medications, Dr. Dean did not explain why these subjective reports indicated that Plaintiff could not work when Plaintiff's objective testing showed no significant deterioration or pathology in his cervical or lumbar vertebrae.

Plaintiff also insists the ALJ unreasonably concluded that Dr. Dean's lack of psychological specialty invalidated his opinion of Plaintiff's psychological functioning or his opinion that work stress would likely deteriorate Plaintiff's condition.  This argument does not assist Plaintiff because Dr. Dean's April 2012's opinions did not attribute inability to work to his mental condition or limits.  Thus, the lack of objective evidence of physical

deterioration impeached the reasons Dr. Dean relied on to opine that Plaintiff could not work. This is all the more so because Dr. Dean's own notes did not show disabling mental impairments. As the ALJ explained, Plaintiff himself reported to Dr. Dean that medication greatly improved his mood and relieved suicidal thoughts. (*PageID*#s 61, 530-32). And thereafter, Plaintiff did not seek, let alone obtain, mental health treatment.

Accordingly, Plaintiff's challenges to the ALJ's assessment of Dr. Dean's opinions lack merit.

B. **Res Judicata**

Plaintiff contends that the ALJ failed to properly evaluate the issue of new and material evidence documenting a significant change in Plaintiff's condition after the previous period of adjudication which resulted in a fatally flawed decision. (*Id.* at *PageID#* 698). He maintains that the ALJ violated Acquiescence Ruling 98-4(6), 1998 WL 283902 (June 1, 1998), by not adopting the residual functional capacity established by ALJ Knapp's decision in July 2010. Plaintiff reasons that the evidence after ALJ Knapp's decision establishes significant worsening of his health problems plus additional new severe impairments.

"Courts have traditionally applied the concept of res judicata to decisions by administrative agencies when a final judgment has been reached." *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840 (6th Cir. 1997). In social security proceedings, "[j]ust as a ... claimant is barred from relitigating an issue that has been previously determined, so is the

12

Commissioner." *Id*. at 842. The Commissioner is therefore bound to a previous ALJ's assessment of a claimant's residual functional capacity "absent evidence of improvement in a clamant's condition." *Id*.

The Commissioner has adopted *Drummond* as the governing res-judicata principles in cases decided within the Sixth Circuit. AR 98-4(6) states:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ ... on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law ....

1998 WL 283902 at *3.

ALJ Redmond set forth the correct legal criteria under both *Drummond* and AR 98-4(6). *See PageID#* 54. He then applied this criteria as follows:

> In this case, the claimant has produced no significant new and material evidence documenting a significant change in the claimant's condition after the prior period of adjudication. The prior unfavorable decision was well-reasoned and upheld by the Appeals council, and thus the residual functional capacity determination in the previous Administrative Law Judge's decision is generally binding for the purpose of this decision.

*Id*.

The evidence Plaintiff points to as supportive of his contention that his condition has deteriorated since ALJ Knapp's previous decision consists of numerous notes written by Dr. Dean. (*PageID*#s 715-16). At best for Plaintiff, Dr. Dean's notes show that the record contains some evidence supporting the conclusion that condition deteriorated after ALJ

13

Knapp's decision. But, this evidence does not refute the substantial evidence supporting ALJ Redmond's assessment of Plaintiff's residual functional capacity. An ALJ's "'findings ... are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion....'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). The objective medical evidence and additional evidence discussed above constitutes more than a scintilla of evidence and could lead a reasonable mind to accept as sufficient to support ALJ Redmond's assessment of Plaintiff's residual functional capacity. *See Blakley*, 581 F.3d at 406 (substantial evidence exists if a "'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'").

Plaintiff next argues that even if ALJ Redmond correctly applied *Drummond* and AR 98-4(6), it is unclear how he found fewer severe impairments than ALJ Knapp. Plaintiff focuses on ALJ Knapp's identification, and ALJ Redmond's omission, of two severe impairments – cubital tunnel syndrome of the left elbow and left knee arthritis. ALJ Redmond, however, explained, "the current record contains no evidence that the claimant continues to have a left knee condition which causes more than minimal function. For example, although orthopedist Ian Thompson, M.D., diagnosed left knee medial meniscus tear on June 4, 2010, short prior to the issuance of [ALJ Knapp's] ... decision, an x-ray of the left knee at that time showed no significant degenerative changes. Subsequent physical examination in the record showed no significant left-knee findings." (*PageID#* 57) (citing

14

PageID#s 531-32; 584-85; 599 and 610; 644-55; 661; 678-82). A review of these records reveals substantial evidence supporting the ALJ's conclusion concerning Plaintiff's left-knee arthritis. As to Plaintiff's cubital tunnel syndrome, ALJ Redmond correctly observed that "the record contains no evidence of any significant complaints of or treatment for any left arm difficulties. Thus, it is reasonable to assume that the release procedure adequately addressed the claimant's condition and that any residuals from the surgery do not cause any more than minimal functional limitations." (*PageID# 57*). Given these explanations, and the substantial supporting evidence, ALJ Redmond sufficiently explained his reasons for not including left-knee arthritis or left-elbow cubital tunnel syndrome as severe impairments.

Plaintiff lastly contends that ALJ Redmond's decision is significantly less limiting than ALJ Knapp's decision because ALJ Redmond did not find Plaintiff precluded from crawling, climbing ladders or scaffolds, or working with detailed and written instructions.

The Commissioner correctly argues that ALJ Redmond's assessment of Plaintiff's residual functional capacity reasonably precluded climbing ladders and scaffolds by precluding "hazards such as unprotected heights." (*PageID# 59*). Plaintiff does not challenge the ALJ's specific explanation that the current RFC's limitation to "simple tasks" adequately accounted for ALJ Knapp's conclusion that Plaintiff could not perform complex, detailed, and written instructions. (*PageID#s 59, 103*); *cf. Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010) ("In analyzing an ALJ's opinion for such fatal gaps or contradictions, we give the opinion a commonsensical reading rather than nitpicking

15

at it.").

Plaintiff has also not demonstrated that the exclusion of crawling or climbing could have plausibly changed the decision.  To the contrary, the Dictionary of Occupational Titles specifies that the jobs identified by the vocational expert during Plaintiff's administrative hearing – small parts assembler (entry 739.687-030), and inspector/hand packer (entry 559.687-074) – require no crawling or climbing.  (*PageID#*s 66, 87-88).  Consequently, even if ALJ Redmond should have included no crawling or climbing, such error was harmless.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be affirmed; and

2. The case be **TERMINATED** on the docket of this Court.

May 13, 2015

             s/Sharon L. Ovington
             Sharon L. Ovington
          Chief United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).